Case 1:21-mj-00452-GMH   Document 1-1   Filed

Case: 1:21-mj-00452
Assigned to: Judge Harvey, G. Michael
Assign Date: 5/27/2021
Description: COMPLAINT W/ ARREST WARRANT

**STATEMENT OF FACTS**

Your affiant, Jordan Good, is a duly deputized Task Force Officer (TFO), and as such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I am assigned to the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force. As part of my duties, I have maintained a high level of continuing education in the rhetoric, symbols, ideology, and tactics of various types of domestic extremists, as well as the laws governing hate crimes, weapons, explosives, and other violent crimes, which typically pertain to violations of Title 18 of the United States Code. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a TFO I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the U.S. Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the U.S. House of Representatives and the U.S. Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the U.S. House of Representatives and U.S. Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the U.S. Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained

in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there, in violation of Federal laws.  Photographs and videos of several of these persons were disseminated via social media and other open source online platforms.  These persons included a white male, wearing a white t-shirt, and a gray/white/black "Columbia" jacket. The images below depict the individual, highlighted with a red box, whom law enforcement has probable cause to believe is James Burton McGrew ("MCGREW").





Your affiant is aware that MCGREW has a tattoo across his stomach that states, "KING JAMES." The tattoo was photographed as part of MCGREW's 2012 booking photographs. A photograph of the tattoo is set forth below.



On January 6, 2021, in footage retrieved from a body worn camera worn by the Metropolitan Police Department of the District of Columbia (MPD) police officers, at approximately 2:52 pm, MCGREW was inside of the U.S. Capitol. As depicted below, MCGREW lifted his shirt to wipe his eyes, displaying a stomach tattoo.



In the video, MCGREW aggressively approached law enforcement officers, yelling statements such as "we're coming in here, whether you like it or not" and "fight with us, not against us." At one point, as MCGREW continued to hold up his phone, MCGREW began to name the officers standing before him and their badge numbers.

At 3:05 pm, body worn camera footage placed MCGREW inside of the Rotunda. According to multiple videos, law enforcement officers attempted to push rioters back to force

them towards one exit door. After MCGREW was pushed back with the crowd, MCGREW lunged forward to strike a law enforcement officer.





After hitting the law enforcement officer, MCGREW retreated away, as law enforcement officers continued to yell to the rioters, "move back."



Within seconds, MCGREW disobeyed law enforcements' commands and moved forward to again approach the officers.



At one point, as MCGREW continued to scream at law enforcement officers, a law enforcement officer calmly told MCGREW, "just leave, just leave man, come on." MCGREW screamed back, "You leave. You leave. This is our house."

Law enforcement officers attempted to again move the rioters towards the door, using their baton to push the rioters back and repeatedly stating, "move back." As the law enforcement officers moved MCGREW back, MCGREW stuck another law enforcement officer.



MCGREW then lunged for the law enforcement officer's baton:



On January 7, 2021, a concerned citizen ("C-1") contacted FBI regarding MCGREW. According to C-1, MCGREW told C-1 prior to January 6th that he (MCGREW) intended to travel to Washington D.C. on January 6th to "protest" the "stolen vote." The tipster further told

FBI that after January 6th, MCGREW showed another employee a video on MCGREW's cellular phone, which depicted MCGREW inside of the U.S. Capitol on January 6, 2021. The tipster also provided to FBI a photograph of MCGREW:



On February 26, 2021, another concerned citizen ("C-2") called the FBI National Threat Operations Center and stated that MCGREW assaulted Capitol Police Officers on January 6, 2021. On March 3, 2021, your affiant contacted C-2 via telephone who advised he/she had photos of MCGREW. On March 3, 2021, C-2 provided via email three photographs of an individual believed to be MCGREW inside the U.S. Capitol. The photographs provided by C-2 appear to be the same photograph with different annotations. One of the photographs provided by C-2 is set forth below.



Based on the foregoing, your affiant submits that there is probable cause to believe that MCGREW violated 18 U.S.C. §§ 1752(a)(1), (2) and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that MCGREW violated 40 U.S.C. §§ 5104(e)(2)(D), (F) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Your affiant submits there is probable cause to believe that MCGREW violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant submits there is probable cause to believe that MCGREW violated 18 U.S.C. §§ 1512(c)(2),2, which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

Finally, your affiant submits there is probable cause to believe that MCGREW violated 18 U.S.C. § 111(a), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person, designated in Title 18 Section 1114, while engaged in or on account of the performance of official duties and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.

_____
Jordan Good
Joint Terrorism Task Force Officer
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 27th day of May 2021.

_____
G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE